IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**GLENN CHIPNER,**            Case 1:14 CV 1158

    Plaintiff,

    v.                                Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                        MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Glenn Chipner filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the exercise of jurisdiction by the undersigned in accordance with Local Rule 72.2(b)(1). (Non-document entry dated August 21, 2014). For the reasons stated below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB on August 2, 2010, alleging a disability onset date of September 19, 2007. (Tr. 84). He applied for benefits due to a herniated disc at L4/L5/S1, neuropathy, and chronic complex regional pain syndrome type II. (Tr. 84). His claim was denied initially (Tr. 84-90) and upon reconsideration (Tr. 92-101). Plaintiff requested a hearing before an administrative law judge ("ALJ") on June 3, 2011. (Tr. 113). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on December 11, 2012, after which the ALJ found Plaintiff not disabled. (Tr. 18-28, 33). The Appeals Council denied Plaintiff's request for

review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on January 14, 2014. (Doc. 1).

**FACTUAL BACKGROUND**

*Personal Background and Testimony*

Plaintiff was born on April 29, 1958 and was 52 years old as of December 31, 2012, his date last insured ("DLI"). (Tr. 38, 84). Plaintiff lived in a house with his wife, adult daughter, and three grandchildren. (Tr. 39-40). Plaintiff graduated high school and had three years of college courses in Information Technology, but no degree. (Tr. 40-41). He also served in the Navy for fifteen years as a cryptologic technician, but was released from the service due to medical issues. (Tr. 41-42). Plaintiff had work experience as a technical coordinator, telecommunications engineer, and software developer, which he stated involved networking, telecommunications, and computer program development. (Tr. 44-45, 47-48). Plaintiff described all his past work as involving approximately 60% walking, 40% sitting, and lifting items upwards of 50 pounds. (Tr. 44-50).

Plaintiff testified he was first found disabled by the military in 1994 for lower back issues and more recently was diagnosed with tinnitus in both ears in 2007, and that his disability rating is 80%. (Tr. 51, 57, 236-41). He claimed the lower back pain, linked to arthritis and a protruding disc, extended down into his knees and legs causing intense stabbing pain. (Tr. 60). The tinnitus caused intermittent ringing in both ears, but predominately his right ear, which he linked to high blood pressure. (Tr. 57-58). He alleged a degenerative issue in both shoulders which sometimes made it difficult to reach or lift a cup of coffee. (Tr. 58). Plaintiff stated he also sporadically used an Albuterol inhaler when he had difficulty breathing. (Tr. 59).

He maintains his health has been deteriorating since a fall in 2007 that caused a tibia fracture and pulmonary embolism. (Tr. 52). He stated he needs a complete left knee replacement because of the fall but, as of the hearing, it had not been completed. (Tr. 65). Plaintiff alleged his complex regional pain syndrome caused debilitating pain requiring him to take 80 milligrams of methadone a day just to function. (Tr. 52). He had been taking methadone, in increased doses, for two and a half years but also stated his doctors rotated him between methadone, morphine, and Oxycodone. (Tr. 53, 62). He admitted that on certain days he takes more than his prescribed dosage to help him get through the day. (Tr. 56). Plaintiff testified a side effect of his medication was loss of short and long term memory. (Tr. 53-54).

He stated his legs swell after too much activity, the cause of this is unknown, but he has to lie down in the middle of the day for three to four hours with his legs elevated to relieve the swelling. (Tr. 54-56). At the hearing, Plaintiff had a walker but testified that the VA prescribed him a cane to ambulate in September 2007 after his fall. (Tr. 61). He also stated he occasionally sleeps in a hospital bed, prescribed at the same time, so that his legs are elevated. (Tr. 61). Plaintiff complained of numbness and stinging pain in his feet due to peripheral neuropathy. (Tr. 64).

As for activities of daily living, Plaintiff did not do much cooking or cleaning because he feared it would cause congestive heart failure. (Tr. 56). He no longer went hunting and fishing because of his knees and he had lost interest in computers because they were too overwhelming. (Tr. 57). Plaintiff testified his shoulder problems made it difficult to dress or bathe. (Tr. 58-59). He testified he could not stand for more than a few moments without a cane or walker and that sitting for long periods was also difficult because of his protruding disc. (Tr. 63-64). He estimated he could walk on a flat surface for only ten to fifteen yards and stated he did not drive

or navigate stairs well. (Tr. 40, 63). Plaintiff stated his pain was precipitated by even the slightest motions and was a nine out of ten on a pain scale about four days a week. (Tr. 190-91). Plaintiff had also requested grab bars for his bathroom and assistance to make his car more comfortable when driving. (Tr. 349).

*Relevant Medical Evidence[1]*

Plaintiff suffered a broken left tibia after a fall in September 2007. (Tr. 272). Later that month, he was diagnosed with a pulmonary embolism and deep vein thrombosis in his left leg. (Tr. 284-87). A few days later, he was admitted to the hospital after a second fall where he injured his left shoulder and knee. (Tr. 289). Lawrence Robinson, M.D., reported Plaintiff had some tenderness in his shoulder even "though passive motion was tolerated 120 degrees with flexion and abduction." (Tr. 290). Dr. Robinson noted no crepitance and found strength, sensation, and motor functions were all normal. (Tr. 290). An x-ray of the knee showed "some progression of displacement" from the tibia fracture. (Tr. 290).

In January 2008, Plaintiff was seen at a Florida hospital for depression and narcotic withdrawal after complaining of severe pain in his left side. (Tr. 300, 307). On examination, it was noted Plaintiff was in no acute distress and his physical systems were normal, however the doctor did diagnose mood disorder and drug dependence. (Tr. 304-05, 308). In March 2008, Plaintiff was seen at Samaritan Hospital in Ohio for a tight and achy chest and coughing up blood. (Tr. 318). His physical examination was normal, however he was administered Dilaudid

---

1. Plaintiff submitted additional medical evidence from after his DLI into the record. (Tr. 462-725). Eligibility for DIB must be established during the relevant time period thus, the medical evidence submitted after the DLI is of minimal relevance to determining disability during the relevant time period. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *see also Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 845 (6th Cir. 2004). Furthermore, Plaintiff did not dispute the ALJ's decision not to consider the medical evidence from after the DLI, therefore those records are not summarized in this opinion.

and morphine for pain in the emergency room. (Tr. 318-26). An angiography showed clear lungs and no evidence of pulmonary embolism or acute chest disease. (Tr. 328). He was discharged with prescriptions for Levaquin and Tessalon for his cough. (Tr. 332).

In July 2009, Plaintiff reported lower back pain at Samaritan Hospital. (Tr. 311). On examination, the records show Plaintiff had tingling in his foot, edema on both lower legs, and muscle tenderness in his back, however all other systems were normal. (Tr. 311, 314). He was diagnosed with a herniated disc, given Dilaudid in the emergency room, and discharged home with prescriptions for Vicodin and Flexeril for his pain. (Tr. 314-15).

On February 2, 2010, Plaintiff was seen at the Orlando Veteran's Administration ("VA") where he complained of lower back pain, left knee pain, and left arm pain radiating into his hands and fingers. (Tr. 380). At this time he reported his medications, Lyrica, Vicodin, Tramadol, and Tylenol, were not effective at controlling his pain or had undesirable side effects. (Tr. 380, 385). A few months later in Ohio, Plaintiff was seen in the emergency room for complaints of back pain, but again his physical examination was normal. (Tr. 392-93). He was prescribed Percocet and Flexeril and discharged home. (Tr. 393). Four days later, Plaintiff returned to the same emergency room complaining of back pain. He was given no further medication but reported a consultation with a pain management doctor the next day. (Tr. 405-06).

In June 2010, the Orlando VA reported Plaintiff refused the treatment plan of the Cleveland VA, stating Plaintiff "consistently requested narcotics and early refills". (Tr. 346). The Orlando VA reported Plaintiff ran out of medication early due to overuse and, although he lived in Ohio, he "flies here for narcotics". (Tr. 346). It was noted Plaintiff could sit and converse comfortably, despite "overly expressive moaning upon entering the office". (Tr. 347). Plaintiff

5

stated he used a cane, a change from May 2010 where he listed no ambulatory device, but had no falls, near falls, nor fear of falling in the last six months. (Tr. 358, 368). He reported left knee tenderness but had no significant bone, joint, or soft tissue abnormalities. (Tr. 347). His left shoulder MRI was normal and the CT of his lumbar spine showed no changes in his condition. (Tr. 347-48). Plaintiff was diagnosed with degenerative arthritis in his knee and left shoulder and a mildly protruding disc at L5/S1. (Tr. 347-48). Sioban McDermott, M.D., recommended the use of Lidoderm patches for Plaintiff's back pain because of "overutilization of current meds". (Tr. 344). Dr. McDermott refused to prescribe Plaintiff narcotics based on his history and the information from the Cleveland VA after which he "raised his voice, [and] was angry." (Tr. 348, 354).

On August 6, 2010, Plaintiff went to the emergency room in Florida reporting extreme pain in his lower back and left leg and the need for pain medication. (Tr. 298). The hospital noted Plaintiff's insistence that his pain was legitimate and he was given a prescription for Percocet. (Tr. 299). Two days later, Plaintiff was seen at an emergency room in Ohio complaining of lower back pain and reported that he was "out of Percocet". (Tr. 414-15). The doctor noted Plaintiff was opiate dependent and prescribed Tramadol. (Tr. 417, 421).

Within a week, Plaintiff returned to the same hospital reporting a back spasm that caused him to lose control of his car, he was not injured in the incident. (Tr. 427). An x-ray showed normal spinal alignment, normal joints, and no fractures but mild degenerative changes in the lumbar spine and a narrowing of the L5/S1 disc space. (Tr. 431). Plaintiff was administered Dilaudid at the hospital and given a prescription for methadone. (Tr. 430, 433). A week later, Plaintiff returned complaining of left knee and back pain from another car accident. (Tr. 435). His physical examination was normal but the knee x-ray showed degenerative changes at the

tibial-femoral joint, he was given Vicodin and discharged with a prescription for Flexeril. (Tr. 438, 440-42). That same month, Plaintiff reported to the Cleveland VA that he would not be returning because he had found pain management elsewhere. (Tr. 342).

Plaintiff began seeing Mohan Kareti, M.D., for pain management resulting from complex regional pain syndrome which was diagnosed by Dr. Fox in Florida. (Tr. 454). He reported constant dull, shooting, burning, aching, stinging, and stabbing pain mostly in his left knee that increased with sitting, walking, lifting, bending, lying, and standing. (Tr. 454). Upon examination, Plaintiff had normal gait, was able to walk on his toes and heels, had normal flexion and extension in his all parts of his back, reported no tenderness in his back, and had normal strength in both shoulders and arms and both lower extremities. (Tr. 454). Dr. Kareti prescribed Plaintiff Percocet and methadone for his pain. (Tr. 454). Plaintiff saw Dr. Kareti monthly and his physical examinations continued to be normal and he reported good pain control, no allergies, no adverse events, and was able to complete all of his activities of daily living. (Tr. 448-453).

*State Agency Examiners*[2]

After a review of the record upon initial determination in September 2010, James Gahman, M.D., and on reconsideration in February 2011, Jerry McCloud, M.D., concluded Plaintiff had exertional limitations which restricted him to occasionally lifting or carrying twenty pounds, frequently lifting or carrying ten pounds, and sitting or standing for no more than six hours in an eight-hour work day. (Tr. 88, 98-99). Both assessed Plaintiff with no postural, manipulative, visual, communicative, or environmental limitations. (Tr. 88, 98-99). On

---

2. Although the review on reconsideration took place after the DLI and thus, has minimal bearing on this opinion, it is included herein to show the administrative process was completed. Furthermore, the opinion on reconsideration was identical to that upon initial determination.

reconsideration, Plaintiff underwent a consultative psychological examination but no limitations were opined upon and no diagnosis given. (Tr. 96, 457-61). Consistent with that examination, Aracelis Rivera, Psy.D., reported no psychological diagnoses and no mental restrictions. (Tr. 97).

*VE Testimony and ALJ Decision*

The VE testified Plaintiff's past relevant work fell into four general categories, supervisory, programmer, technical coordinator, and telecommunications; all of which could be performed at range of work from sedentary to medium. (Tr. 72-73). The ALJ then asked if a hypothetical person of Plaintiff's age, education, and work experience who could perform light work but only occasionally operate foot controls with their left lower extremity and only frequently reach overhead with their left upper extremity could perform Plaintiff's past work. (Tr. 73). The VE stated this hypothetical person could not perform the medium level of work, as Plaintiff has previously performed it, but could perform sedentary jobs as a programmer or information supervisor. (Tr. 73).

After reducing the work level to sedentary and including a sit/stand option, the VE still testified that Plaintiff could perform his past work albeit at the lower exertion level. (Tr. 74). The VE opined Plaintiff had transferable skills in computer systems, troubleshooting, technical support, code-writing, and record keeping. (Tr. 75). The VE testified Plaintiff could perform work as a telecommunications specialist and a computer processing scheduler with his transferable skills, as long as he was not off task more than ten percent of the time. (Tr. 76, 77-78). Plaintiff's attorney then asked if having to elevate one's legs would alter the VE's answer, to which he responded in the traditional work place that would not be allowed so work would be unavailable. (Tr. 80-81).

In January 2013, the ALJ found Plaintiff had the severe impairments of degenerative disc disease, osteoarthritis of the right shoulder and left knee, and chronic regional pain syndrome; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 23-24). The ALJ then found Plaintiff had the RFC to perform light work except that Plaintiff may occasionally operate foot controls with left lower extremity and he can frequently reach overhead with his left upper extremity. (Tr. 24). The ALJ found Plaintiff's complaints of debilitating pain were not credible and stated that no medical opinion had ever found him impaired. (Tr. 24-27). Based on the VE testimony, the ALJ found Plaintiff could perform his past work as a supervisor and programmer, at a lower exertion level. (Tr. 27).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ erred because (1) his credibility analysis was incorrect; (2) the RFC lacked substantial evidence; and (3) he should have utilized the grid to find Plaintiff disabled. (Doc. 16, at 1). Each argument will be addressed in turn.

*Credibility*

Plaintiff argues the ALJ's credibility determination was not based on substantial evidence. (Doc. 16, at 10-12). Particularly, Plaintiff alleges his pain alone supports a finding of disability because of his consistent complaints of pain and objective medical findings. (Doc. 16, at 11-12); *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994).

When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. An ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1.

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding his pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-7p, 1996 WL 374186. For pain or other subjective complaints to be

considered disabling, there must be: 1) objective medical evidence of an underlying medical condition; or 2) objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard, as Plaintiff points out, does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs*, 801 F.2d 847, 853 (6th Cir. 1986). In evaluating credibility of Plaintiff's complaints an ALJ considers certain factors:

> (i) [A claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;
>
> (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record."

*Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ noted multiple inconsistencies between Plaintiff's complaints of pain and objective examinations, particularly that his range of motion, sensation, and strength were consistently normal. (*See* Tr. 25-26, 290, 304-05, 308, 315, 318, 347, 370, 372, 393, 416, 448-54). Plaintiff also reported to his pain management doctor that he was capable of performing all activities of daily living, reports that are contradictory to Plaintiff's testimony about his abilities. (Tr. 58-59, 448-54). The ALJ cited the lack of evidence of side effects of medication specifically that Plaintiff had never reported memory loss to any medical professional, was able to converse in detail about his medical conditions and past work, and had normal memory and concentration upon examination. (Tr. 25, 41-50, 459-61). Lastly, the ALJ observed, and several medical reports confirm, that Plaintiff misused narcotic pain medication. (*See* Tr. 299, 300, 307, 344-48, 354, 405-05, 414-15, 417, 421).

After reviewing the record and the ALJ's decision, the Court finds that the ALJ had substantial evidence to support his credibility determination. Plaintiff provided hardly any objective evidence of the cause of his pain beyond x-rays that showed mild degenerative arthritis and mild degenerative disc disease, conditions that did not worsen throughout the relevant time frame. (Tr. 347-48). Even with these consistent complaints, the majority of his physical examinations showed no or only minor abnormalities. (*See* 290, 304-05, 308, 315, 318, 347, 370, 372, 393, 416, 448-54). Further, the diagnosis of complex regional pain syndrome, a legitimate but rare medical condition, was not supported by any evidence in the record beyond a reference to the condition in a referral note to Dr. Kareti. (Tr. 454). The lack of documentation as relates to the diagnosis of this condition coupled with the inconsistency of the other objective medical

13

evidence does not support a finding of disability. Even if Plaintiff's consistent subjective complaints were enough, substantial evidence exists to support the ALJ's reasonable conclusion that Plaintiff's complaints of pain were not entirely credible. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

*RFC*

Next, the Plaintiff argues the ALJ did not have substantial evidence to support his RFC. (Doc. 16, at 13). A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. The RFC determination is one reserved for the ALJ. 20 C.F.R. § 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5.

Here, the ALJ clearly evaluated all the medical evidence in the record. He discussed in detail the many inconsistencies among Plaintiff's physical examinations and his subjective complaints. (Tr. 25-27). For example, the record has no reports of memory loss and consistently shows normal range of motion, gait, and motor function. (*See* Tr. 25, 290, 304-05, 308, 315, 318, 347, 370, 372, 393, 416, 448-54). And while Plaintiff's records do demonstrate degenerative disc disease and arthritis, they also show no worsening of the conditions. (Tr. 347-48). Furthermore, no medical opinion was provided that contradicted that of the State Agency examiners who found Plaintiff capable of working at a less restrictive level than the ALJ's RFC. (Tr. 27, 88, 98-99). Plaintiff cited to no medical opinion that he was prescribed a cane to ambulate or needed to raise his legs for hours at a time besides his own testimony, which was already determined to be not entirely credible. The ALJ relied on the available objective evidence in determining the RFC,

which was more restrictive than the only medical opinions in the record. The ALJ had substantial evidence upon which to base his RFC, and thus did not err.

*Use of the Grid*

Plaintiff also alleges the ALJ erred in not utilizing Medical-Vocational Guideline 201.14 to find him disabled. (Doc. 16, at 14-16). An ALJ may find disability by applying the Medical-Vocational Guidelines, also referred to as the "grids", which dictate a finding of "disabled" or "not disabled" based on the claimant's exertional limitations, age, education, and prior work experience. *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981). The grids are a shortcut to eliminate the need for calling a VE. *Hurt v. Secretary of Health and Human Servs.*, 816 F.2d 1141, 1143 (6th Cir. 1987). However, an ALJ may only use the grid if it is determined that Plaintiff cannot perform their past relevant work. *Cole*, 820 F.2d at 771.

Here, the ALJ found, based on testimony from the VE, that Plaintiff was capable of performing his past work as a supervisor and a programmer, as those positions are typically performed in the national economy. (Tr. 27-28). Plaintiff argues that because he performed the work at the medium exertional level and is no longer able to do so, he cannot perform his past work. (Doc. 16, at 15). However, this argument ignores the testimony of the VE, which was based on the Dictionary of Occupational Titles, that positions like those held by Plaintiff in the past are performed at exertional levels between sedentary and medium. (Tr. 72-73). Thus, although Plaintiff can no longer perform medium work, he is capable of performing his past work at the lower exertional levels, which in fact is the more typical exertional level assigned to the positions. (Tr. 72-73). As the Court has already found that the ALJ's RFC and credibility determination were supported by substantial evidence, there can be no error in the information

15

relied upon by the VE in giving his testimony. Therefore, the Plaintiff's final assignment of error is overruled.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.

                                                                         s/James R. Knepp II
                                                                         United States Magistrate Judge